# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Curtis J. Bryant (Affiant), a Special Agent of the Federal Bureau of Investigation (FBI), Jefferson City, Missouri Office, having been first duly sworn, do hereby state as follows:

## INTRODUCTION

1. I am a Special Agent with the FBI, and have been since 2002. I am currently assigned to the Kansas City Division Joint Terrorism Task Force. I began working for the FBI in 2002. Previously, since 1994, I have been a Patrolman with the City of Statesboro, Georgia, a Special Agent with the Georgia Bureau of Investigation, and State Trooper with the Missouri State Highway Patrol. Throughout my career, I have been involved in the investigations of numerous types of offenses against the United States, including those involving the use of the internet and the web. Also, I am familiar with the manner in which federal crimes are committed and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. Your Affiant is presently assigned as one of the FBI's primary investigative officers for the matters described herein. The facts in this affidavit are derived from your Affiant's personal observations, his training and experience, consultation with professionals in the applicable scientific fields, and information obtained from other agents, detectives, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of the Affiant's knowledge about this matter.

3. Between June 14, 2018, and August 23, 2018, Jason William Siesser, attempted to purchase _____, to use as a chemical weapon, via the internet on two occasions. Siesser paid for the _____ with a digital "crypto" currency known as Bitcoin (BTC), existing entirely on the Internet and not in any physical form.

4.      This investigation has revealed that Siesser ordered            , a highly toxic chemical, in amounts capable of killing many people, to be delivered to 1013 Southampton Dr., Columbia, Missouri, in the name of Juvenile #1.  No one who resides at the residence is known to be engaged in an occupation or purpose that is allowed under 18 U.S.C. § 229.

5.      The FBI Laboratory, Scientific Response and Analysis Unit (SRAU) at Quantico, Virginia opined that            – (Chemical Abstract Registry (CAS) #: 593-74-8) is a colorless, volatile, flammable, and highly toxic liquid.            is toxic orally and by inhalation, and is easily absorbed through the skin. It may produce life-threatening systemic effects with only a single drop.            is cited to have an acute toxicity hazard rating for skin exposure of one under the Globally Harmonized System (GHS) for communicating chemical hazards.[1]  A rating of one is the highest toxicity rating under GHS, and indicates an LD50 below 50 mg/kg. The U.S. Agency for Toxic Substances and Disease Registry (ATSDR) states that "            is extremely volatile, and extremely toxic (in the 5 mg/kg body weight range."[2] These properties indicate that            can be used nefariously to poison humans. Because of its high toxicity,            has very few legitimate applications, and is primarily used in chemical research.

6.            is a highly toxic poison capable of causing death in minute quantities.  To supply one example taken from the website of the American Council on Science and Health:

> In 1996, [Redacted], an organometallic chemist at Dartmouth College, was running an experiment that required the use of a chemical called            , a

---

[1]            Safety Data Sheet. Sigma-Aldrich. Dated 8/17/2014. Accessed online 8/23/2018.

[2] ATSDR. Toxicological profile for mercury. March 1999. Accessed online 8/23/2018.

2

colorless, volatile, sweet-smelling liquid. She was using all proper safety precautions — protective clothing, gloves, and most important, a negative pressure fume hood. During the transfer, [Redacted] spilled one or two drops of the liquid on the back of one of her latex gloves. After five months, she began to display symptoms of severe neurological impairment, and was hospitalized. Three weeks later she slipped into a coma. Five months later she was dead from mercury poisoning. There was nothing that could be done to save her life, including chelation therapy. (Footnotes removed by affiant.)

### **TITLE 18 U.S.C § 229 (A)**

7. Title 18 U.S.C. § 229(a)(1) makes it unlawful for any person to knowingly develop, produce or otherwise acquire, transfer directly or indirectly, receive, stockpile, own, retain, possess or use threaten to use, any chemical weapon or to assist or induce, in any way, any person to do the same. Section 229(a)(2) makes it unlawful to attempt or conspire to violate Section 229(a)(1).

8. Definition of chemical weapon. A "chemical weapon" means the following: together or separately: (A) A toxic chemical and its precursors, except where intended for a purpose not prohibited under this chapter as long as the type and quantity is consistent with such a purpose. 18 U.S.C. § 229F(1).

9. Definition of toxic chemical. The term "toxic chemical" means any chemical, which through its chemical action on life processes can cause death, temporary incapacitation, or permanent harm to humans or animals. 18 U.S.C. § 229F(8).

10. Definition of "purposes not prohibited by this chapter." "Any peaceful purpose related to an industrial, agricultural, research, medical, or pharmaceutical activity or other activity . . . . " 18 U.S.C. § 229F(7).

## DETAILS OF THE INVESTIGATION

11. Siesser is currently employed by a group home that houses juveniles under contract with the State of Missouri. Siesser is the custodial guardian of two juveniles at 1013 Southampton Dr., Columbia, Missouri.

12. During an undercover operation, law enforcement personnel observed the following: On July 4, 2018, Siesser sent BTC to the seller of the ⬛⬛⬛ via the internet after having acknowledged to the seller that he understood that the acquisition of ⬛⬛⬛ posed a risk of death to anyone who came into direct or indirect contact with it. Siesser provided the shipping address in the name of Juvenile #1, referred to by his middle and last names, at 1013 Southampton Dr., Columbia, MO 65203. Siesser ordered two (2) ten (10) milliliter (ml) units of ⬛⬛⬛. The seller did not ship the ⬛⬛⬛ to Siesser. Siesser continued to contact the seller. On July 19, 2018, Siesser told the seller that, "I plan to use it soon after I receive it. I don't really have any concerns. If you have any tips or care to offer advice feel free."

13. On August 5, 2018, Siesser made a second attempt to purchase ⬛⬛⬛ from the seller. Siesser provided the shipping address in the name of Juvenile #1, referred to by his first initial and last name, at 1013 Southampton Dr., Columbia, MO 65203. Siesser ordered three (3) ten (10) millimeter (ml) units of ⬛⬛⬛. Siesser paid for this order with BTC, paying the equivalent of $150 USD. It is believed that this quantity of ⬛⬛⬛ has the capacity to kill approximately 300 persons.

14. On August 23, 2018, at approximately 13:11 hours, at 1013 Southampton Dr., Columbia, Missouri, Siesser signed for a package that he understood contained the ⬛⬛⬛ he had ordered from the seller. This package contained an inert substance, not

4

. Surveillance officers observed that Siesser ventilated the residence, by opening a door, after he received the package containing what he believed to be            .

15.     On August 23, 2018, at approximately 13:43 hours, law enforcement executed a federal search warrant at 1013 Southampton Dr., Columbia, Missouri. Siesser was the only person present at the residence when the package was delivered and when the search warrant was executed.

16.     As law enforcement executed the search warrant, Siesser came to the front door after officers knocked and announced their presence. Siesser was detained and asked if there was anything that would harm officers. Siesser stated that there was a quantity of acid and powder in the garage on the top shelf. When asked about the package that had just been delivered, Siesser said that he did not know what the agent meant. Siesser stated that he had just had a speaker delivered and that the speaker was on the shelf with the acid and powder. Siesser was then transported to the Columbia Police Department.

## SEARCH OF 1013 SOUTHAMPTON DR.

17.     During the execution of the search warrant officers seized the following items:

a.     Officers located the USPS shipping box delivered at 13:11 hours on top of a dog kennel near the rear door. The box was opened with contents removed.

b.     Inside a large round trashcan in the garage, officers found the discarded vessel in which the substance Siesser believed was            was contained, with the vials removed.

c.     On top of a shelf affixed to the west wall of the garage, officers located the substance Siesser believed was            , precisely where Siesser said it would be.

5

d. Next to the substance that Siesser believed was             , officers located two separate and seemingly unopened shipping boxes that were found to contain approximately 10 grams of cadmium arsenide[3], approximately 100 grams of cadmium metal and approximately 500 ml of hydrochloric acid.[4] An invoice for these products showed that they had been ordered together on March 30, 2018, and delivered to an address in Higbee, Missouri.

e. Writings located within the home articulated heartache, anger, and resentment over a breakup and a desire for the unidentified cause of the heartache to die. In part, one of these writings stated:

> I wish I'd never met you but now it's not too late. The things you've taught me showed me a new kind of love. Our early ending was all wrong. You discarded me like trash but look how I got strong.
> Now that I see you just for what you are I know better. I still have the scar Some day I'll find you and make your day. The darkness that consumes me will overflow one day.
> You were there to teach me something I already knew Now it's my turn to teach you a lesson filled with pain Your life is forfeit, flushed down the drain.

Another writing stated:

> They say I should let it go But my hatred's just too strong Letting go of anger is the right thing But it makes me feel so strong I dream about your ending You burn up in flames You suffocate on your own blood Your soul completely drained Right now your happy But that won't last My anger is coming And you won't die fast!

18. No equipment used to conduct chemistry or genetic experiments was located inside the residence.

---

[3] Cadmium arsenide is a toxic compound which, like the above described hazardous material, can be deadly if ingested or inhaled.

[4] If mixed together, cadmium and hydrochloric acid can create an expanding, pressure creating gas that could escape a containment device.

## INTERVIEW OF JUVENILE #1

19. While the search warrant was executed, officers located Juvenile #1 and arranged to interview Juvenile #1. Juvenile #1 acknowledged that he understood that he was being interview about Siesser, his current care provider. Juvenile #1 voluntarily provided the following information:

    a. On June 13, 2018, Juvenile #1 was placed with Siesser who resided at 1013 South Hampton Dr., Columbia, Missouri, 65203. Juvenile #1 described Siesser as a nice guy. Juvenile #1 had no complaints about living with Siesser.

    b. Recently, Siesser grounded Juvenile #1. Juvenile #1 was not allowed to use the internet over the last 3-4 days because Siesser had changed the WiFi password as a punishment.

    c. Juvenile #1 has never used the Southampton Dr. address to receive packages. Juvenile #1 stated that if there was a package with his name on it delivered to the Southampton address, someone else would be responsible for sending that package.

    d. On one occasion, Juvenile #1 overheard a telephone conversation between Siesser and a friend, who Siesser described as a chemical engineer. The two were planning on doing some "stuff." Juvenile #1 could not determine if the conversation was nefarious.

    e. On two or three occasions, Siesser explained to Juvenile #1 and Juvenile #2 that there were dangerous chemicals in the residence. Siesser told Juvenile #1 and Juvenile #2 that they were to never handle the chemicals. Juvenile #1 has never actually seen any chemicals in the residence.

f.  Juvenile #1 and Juvenile #2 were allowed in all areas of the residence.

g.  Juvenile #1 never witnessed any chemistry equipment laying around the house. Juvenile #1 never saw Siesser conducting any chemistry type experiments.

h.  Siesser told Juvenile #1 that he was in the military and that he wanted to be an Assassin. Siesser stated that he wanted to kill those that have wronged him in the past. Siesser stated that he wanted to kill his "Ex" from the Netherlands, as well as, others. Juvenile #1 wasn't sure if Siesser was serious.

## INTERVIEW OF SIESSER

20.  At the Columbia Police Department, Siesser was advised of his *Miranda* rights, acknowledged those rights, and waived those rights. Siesser made the following statements:

a.  Siesser admitted he purchased three vials of _____ from a website for $52 worth of BTC per vial. Siesser admitted that he used the name of Juvenile #1, who he cared for at 1013 Southampton Dr., because he did not want to get in trouble if the purchase was traced to him.

b.  Siesser knew a permit was required to purchase _____ because it was so toxic that only a drop or two could kill someone after months of suffering. Siesser had read an article about a scientist who died after being exposed to _____. Siesser had previously attempted to purchase _____ from a legitimate internet chemical supplier, but the sale was refused when Siesser did not have the required permit. Siesser told this supplier the _____ was for a gifted chemistry student.

c.  Siesser claimed he purchased the _____ for scientific experiments related to bio-hacking, a form of gene editing through protein manipulation.

8

Siesser had no education or training in chemistry or genetics, no equipment to complete the experiments, and had not yet decided what experiments he intended to conduct. The only other step Siesser took to set up his home laboratory was to purchase hydrochloric acid, cadmium and cadmium arsenide. Siesser was unable to recall how these compounds were used in bio-hacking. Siesser claimed           was used to denature proteins in bio-hacking experiments. Siesser had no response when advised           was not used in gene editing, and its ability to denature proteins is what made it toxic.

    d.    Siesser had two relationships with women that left him brokenhearted. Siesser was married to S.S. and lived with her in the Netherlands until approximately 2012. After years of separation, Siesser and S.S. divorced in 2017 when he met A.W. in Columbia, Missouri. Although they had only three dates, Siesser felt a strong connection with A.W. Siesser was depressed for six months and sought counselling after A.W. unexpectedly broke it off with him. Siesser wrote fictional stories about men exacting vengeance on ex-girlfriends. In one story, a man used a fertilizer spreader to lace a woman's yard with asbestos, which ultimately killed her decades later. In another story, a man locked a woman in scuba gear in a submerged box so she would die when her oxygen tank was depleted.

    e.    Siesser was in the process of acquiring a $100,000 whole life insurance policy for his 72-year-old father. The policy premium was $6,000 per year. While Siesser was not currently financially dependent on his father, he viewed the life insurance policy as extra inheritance if his father died.

    f.    Siesser traveled to the Netherlands from June 21 to July 3, 2018. Siesser visited friends, his former in-laws, and his dog. Siesser did not visit S.S. during this trip.

g. When asked about whether he had told Juvenile #1 that he was an assassin, Siesser acknowledged that he had discussions with Juvenile #1 about Siesser being an assassin.

h. Siesser also stated that he has had conversations about doomsday scenarios and the end of the world with students.

## CONCLUSION

21. Based upon the foregoing information, I believe there is probable cause to arrest Jason William Siesser for attempt to possess a chemical weapon in violation of 18 U.S.C. § 229(a)(1) and (2).

22. The facts set forth in this affidavit are true and correct to the best of my knowledge and belief.

**Curtis J. Bryant**
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me, on this __24th__ day of August, 2018.

**WILLIE J. EPPS, JR.**
United States Magistrate Judge