# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, v. **JASON WILLIAM SIESSER**, Defendant. | No. 18-04107-01-CR-C-RK |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Michael S. Oliver, Assistant United States Attorney, and the defendant, Jason William Siesser ("the defendant"), represented by Christopher A. Slusher.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to Counts 1 and 4 of the Indictment, charging him in Count 1 with a violation of 18 U.S.C. § 229(a)(1) and (2), that is, attempt to acquire a chemical weapon, and in Count 4 with a violation of 18 U.S.C. § 1028A(a)(2), that is, aggravated identity theft. By entering into this plea agreement, the

defendant admits that he knowingly committed these offenses, and is, in fact, guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

**Counts 1 and 4**

Between June 14, 2018, and August 23, 2018, said dates being approximate, within Boone County, in the Western District of Missouri, and elsewhere, the defendant, knowingly attempted to acquire, receive, retain, and possess a chemical weapon via the internet on two occasions. The defendant paid for the chemical weapon with a digital "crypto" currency known as Bitcoin (BTC), existing entirely on the internet and not in any physical form. The defendant ordered a highly toxic chemical, in amounts capable of killing many people, to be delivered to 1013 Southampton Dr., Columbia, Missouri, in the name of Juvenile #1. No one who resides at the residence was engaged in an occupation or purpose that is allowed under 18 U.S.C. § 229.

On July 4, 2018, the defendant sent BTC to the seller of the chemical weapon via the internet after having acknowledged to the seller that he understood that the acquisition of the chemical weapon posed a risk of death to anyone who came into direct or indirect contact with it. The defendant provided the shipping address in the name of Juvenile #1, referred to by his middle and last names, at 1013 Southampton Dr., Columbia, MO 65203. The defendant ordered two (2) ten (10) milliliter (ml) units of the chemical weapon. The seller did not ship the chemical weapon to the defendant at that time.

The defendant continued to contact the seller. On July 19, 2018, the defendant told the seller that, "I plan to use it soon after I receive it. I don't really have any concerns. If you have any tips or care to offer advice feel free."

On August 5, 2018, the defendant made a second attempt to purchase the chemical weapon from the seller. The defendant provided the shipping address in the name of Juvenile #1, referred to by his first initial and last name, at 1013 Southampton Dr., Columbia, MO 65203. The defendant ordered three (3) ten (10) millimeter (ml) units of the chemical weapon. The defendant paid for this order with BTC, paying the equivalent of $150 USD. This quantity of the chemical weapon has the capacity to kill approximately 300 persons.

On August 23, 2018, at approximately 13:11 hours, at 1013 Southampton Dr., Columbia, Missouri, the defendant signed for a package addressed to Juvenile #1, referred to by his first initial and last name, at 1013 Southampton Dr., Columbia,

2

MO 65203. The defendant understood that the package contained the chemical weapon he had ordered from the seller. This package contained an inert substance, not the chemical weapon. After the defendant received the package containing what he believed to be the chemical weapon he ordered, surveillance officers observed the defendant open an exterior door of the residence to ventilate the interior.

On August 23, 2018, at approximately 13:43 hours, law enforcement executed a federal search warrant at 1013 Southampton Dr., Columbia, Missouri. The defendant was the only person present at the residence when the package was delivered and when the search warrant was executed.

As law enforcement executed the search warrant, the defendant came to the front door after officers knocked and announced their presence. The defendant was detained and asked if there was anything that would harm officers. The defendant stated that there was a quantity of acid and powder in the garage on the top shelf. When asked about the package that had just been delivered, the defendant said that he did not know what the agent meant. The defendant stated that he had just had a speaker delivered and that the speaker was on the shelf with the acid and powder.

Officers located the USPS shipping box delivered at 13:11 hours on top of a dog kennel near the rear door. The box was opened with contents removed. Inside a large round trashcan in the garage, officers found the discarded vessel in which the chemical weapon was contained, with the vials removed. On top of a shelf affixed to the west wall of the garage, officers located the inert substance the defendant believed to be a chemical weapon precisely where the defendant said it would be.

Next to the inert substance the defendant believed to be a chemical weapon, officers located two separate and seemingly unopened shipping boxes that were found to contain approximately 10 grams of cadmium arsenide, a toxic compound, which can be deadly if ingested or inhaled; approximately 100 grams of cadmium metal and approximately 500 ml of hydrochloric acid. An invoice for these products showed that they had been ordered together on March 30, 2018, and delivered to an address in Higbee, Missouri. If mixed together, cadmium and hydrochloric acid can create an expanding, pressure creating gas that could escape a containment device.

Writings located within the home articulated heartache, anger, and resentment over a breakup and a desire for the unidentified cause of the heartache to die. In part, one of these writings stated:

> I wish I'd never met you but now it's not too late. The things you've taught me showed me a new kind of love. Our early ending was all wrong. You discarded me like trash but look how I got strong.

> Now that I see you just for what you are I know better. I still have the scar Some day I'll find you and make your day. The darkness that consumes me will overflow one day.
>
> You were there to teach me something I already knew Now it's my turn to teach you a lesson filled with pain Your life is forfeit, flushed down the drain.

Another writing stated:

> They say I should let it go But my hatred's just too strong Letting go of anger is the right thing But it makes me feel so strong I dream about your ending You burn up in flames You suffocate on your own blood Your soul completely drained Right now your happy But that won't last My anger is coming And you won't die fast!

No equipment used to conduct chemistry or genetic experiments was located inside the residence.

Juvenile #1 was interviewed. Juvenile #1 had been placed in the defendant's custody on June 13, 2018, by the State of Missouri. Juvenile #1 never used the Southampton Dr. address to receive a package. Juvenile #1 stated that if his/her name was the addressee on a package someone other than him/her ordered the package. On two or three occasions, the defendant explained to Juvenile #1 and Juvenile #2 (another person in the defendant's custody) that there were dangerous chemicals in the residence. The defendant told Juvenile #1 and Juvenile #2 that they were to never handle the chemicals. Juvenile #1 had never actually seen any chemicals in the residence. Juvenile #1 and Juvenile #2 were allowed in all areas of the residence. Juvenile #1 never witnessed any chemistry equipment laying around the house. Juvenile #1 never saw the defendant conducting any chemistry type experiments. The defendant told Juvenile #1 that he wanted to kill those that have wronged him in the past. The defendant stated that he wanted to kill his "Ex" from the Netherlands, as well as, others. Juvenile #1 wasn't sure if the defendant was serious.

The defendant was interviewed after waiving his *Miranda* rights. The defendant admitted he purchased three vials of the chemical weapon from a website for $52 worth of BTC per vial. The defendant admitted that he used the name of Juvenile #1, who he cared for at 1013 Southampton Dr., because he did not want to get in trouble if the purchase was traced to him. The defendant knew a permit was required to purchase the chemical weapon because it was so toxic that only a drop or two could kill someone after months of suffering. The defendant had read an article about a scientist who died after being exposed to the chemical weapon. The defendant had previously attempted to purchase the chemical weapon from a legitimate internet chemical supplier, but the sale was refused because the

4

defendant did not have the required permit. The defendant told this supplier the chemical weapon was for a gifted chemistry student. The defendant claimed he purchased the chemical weapon for scientific experiments related to bio-hacking, a form of gene editing through protein manipulation. The defendant had no education or training in chemistry or genetics, no equipment to complete the experiments, and had not yet decided what experiments he intended to conduct. The only other step the defendant took to set up his home laboratory was to purchase hydrochloric acid, cadmium and cadmium arsenide. The defendant was unable to recall how these compounds were used in bio-hacking. The defendant claimed the chemical weapon he purchased was used to denature proteins in bio-hacking experiments. The defendant had no response when advised by an FBI Special Agent that the chemical weapon he purchased was not used in gene editing, and its ability to denature proteins is what made it toxic. The defendant had two relationships with women that left him brokenhearted. The defendant was married to S.S. and lived with her in the Netherlands until approximately 2012. After years of separation, the defendant and S.S. divorced in 2017 when he met A.W. in Columbia, Missouri. Although they had only three dates, the defendant felt a strong connection with A.W. The defendant was depressed for six months and sought counselling after A.W. unexpectedly broke it off with him. The defendant wrote fictional stories about men exacting vengeance on ex-girlfriends. In one story, a man used a fertilizer spreader to lace a woman's yard with asbestos, which ultimately killed her decades later. In another story, a man locked a woman in scuba gear in a submerged box so she would die when her oxygen tank was depleted.

In connection with Count 1, the defendant admits that he knowingly attempted to acquire, receive, retain, possess and use a chemical weapon; and that he did not attempt to acquire that chemical weapon for a peaceful or protective purpose.

In connection with Count 4, the defendant admits that he knowingly used the name of Juvenile #1 on August 23, 2018; that he knew Juvenile #1's name belonged to Juvenile #1; that he used the name of Juvenile #1 without lawful authority; and, that he used the name of Juvenile #1 during and in relation to the crime of attempt to acquire chemical weapons in violation of 18 U.S.C. § 229(a)(2) as charged in Count 1 of the Indictment.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The

defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the Indictment, charging him with attempt to acquire a chemical weapon, the Court may impose imprisonment for any term of years, a $250,000 fine, not more than five (5) years' supervised release, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

The defendant understands that, upon his plea of guilty to Count 4 of the Indictment, charging him with aggravated identity theft the minimum penalty the Court may impose is not less than five (5) years' imprisonment, while the maximum penalty the Court may impose is not more than Life imprisonment, a $250,000 fine, not more than five (5) years' supervised release, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

  c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than five years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one (1) year is imposed;

  d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to five (5) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five (5) years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

  e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

  f. any sentence of imprisonment imposed by the Court will not allow for parole;

  g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

  h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

  7. **<u>Government's Agreements</u>.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to chemical weapons acquisition and aggravated identity theft for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count 2 and 3 of the Indictment at sentencing. Further, the government and the defendant agree to jointly recommend a sentence of imprisonment of eighty-four (84) months on Count 1 and a consecutive sentence of

imprisonment of sixty (60) months on Count 4 for a total sentence of imprisonment of one-hundred-forty-four (144) months of imprisonment.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands that the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further

8

Case 2:18-cr-04107-RK   Document 41   Filed 08/04/20   Page 8 of 16

reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b. The applicable Guidelines section for the offenses of conviction are U.S.S.G. § 2M6.1, which provides for a base offense level of 28 on Count 1, and U.S.S.G. § 2B1.6, which provides for a consecutive sentence of 60-months on Count 4;

   c. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention

9

to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

      d.     The defendant's criminal history category is Category I. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

      e.     The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

      f.     The government and the defendant agree to jointly recommend a sentence of imprisonment of eighty-four (84) months on Count 1 and a consecutive sentence of imprisonment of sixty (60) months on Count 4 for a total sentence of imprisonment of one-hundred-forty-four (144) months of imprisonment. The agreement by the parties is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

      g.     The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment) and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

      h.     The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

10

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charges in the Indictment;

   c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement,

except on grounds of: (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

      b.    The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines or an abuse of discretion. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16.    **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

      a.    The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

17.    **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18.    **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19.    **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing

of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the

parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.**  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                        **Timothy A. Garrison**
                                        United States Attorney

                               By

Dated: 7/30/2020                      **Michael S. Oliver**
                                          Assistant United States Attorney
                                          Missouri Bar No. 41832

     I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 7/29/2020                      **Jason William Siesser**
                                          Defendant

     I am defendant Jason William Siesser's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, defendant Jason William Siesser's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 7/29/2020                      **Christopher A. Slusher**
                                          Attorney for Defendant